UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 09-223-DLB

MARGARET LOUISE MOORE							PLAINTIFF


vs.			**MEMORANDUM OPINION & ORDER**


MICHAEL J. ASTRUE, Commissioner
SOCIAL SECURITY ADMINISTRATION						DEFENDANT

\* \* \* \* \* \* \*

This action was brought pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, will affirm the Commissioner's decision, as it is supported by substantial evidence.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Margaret Louise Moore applied for disability and disability insurance benefits on October 10, 2006. (Tr. 94-98). Plaintiff's earnings record shows that she has acquired sufficient coverage to remain insured through September 30, 2010. (Tr. 9). Thus, Plaintiff must establish disability, on or before that date, in order to be entitled to a period of disability and disability insurance benefits. (Tr. 9). At the time of filing, Plaintiff was 61 years old and alleged a disability onset date of July 22, 2006. (Tr. 94). Plaintiff alleges that she is unable to work due to the following impairments: paroxysmal atrial fibrillation and atrial flutter; high blood pressure; left eye blindness; glaucoma in right eye; carpal tunnel

1

syndrome; arthritis of left knee-status post remote arthroscopy and partial meniscus repair; and degenerative disc disease of the lumbar spine-status post remote surgery. (Doc. #7-2, 1). Her application was denied initially and again on reconsideration. (Tr. 32-35, 36-38). At Plaintiff's request, an administrative hearing was conducted on May 21, 2008. (Tr. 9). On September 24, 2008, Administrative Law Judge (ALJ) Roger L. Reynolds ruled that Plaintiff was not disabled and therefore not entitled to disability an disability insurance benefits. (Tr. 9-14). This decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on May 12, 2009. (Tr. 24-28).

On June 22, 2009, Plaintiff filed the instant action. (Doc. #1). The matter has culminated in cross-motions for summary judgment, which are now ripe for adjudication. (Docs. #7,8).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). Even if

there is evidence favoring Plaintiff's side, the Commissioner's findings must be affirmed if supported by substantial evidence. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant still performs substantial gainful activity; Step 2, whether any of the claimant's impairments, alone or in combination, are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform her past relevant work; and Step 5, whether a significant number of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity." *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 22, 2006, the alleged onset date of disability. (Tr. 11). At Step 2, the ALJ found that Plaintiff has the following medically determinable impairments: hypertension, atrial fibrillation and left eye blindness. (Tr. 11). However, the ALJ also found that Plaintiff does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit) her ability to perform basic work-related activities for twelve (12) consecutive months. (Tr. 12). Therefore, the ALJ found that Plaintiff does not have

a severe impairment or combination of impairments. (Tr. 12). As soon as a disability determination can be made, the sequential evaluation process ends. 20 C.F.R. § 404.1520(a). Once the ALJ determined that Plaintiff did not have a severe impairment or combination of impairments and was not disabled, it was unnecessary for him to consider Steps 3, 4, and 5 of the analysis. ALJ Reynolds therefore concluded that Plaintiff has not been under a disability, within the meaning of the Social Security Act, since Plaintiff's alleged onset date of July 22, 2006. (Tr. 14).

**C.     Analysis**

Plaintiff argues that the ALJ's determination that the Plaintiff has no severe impairments is not supported by substantial evidence and represents an error of law. Plaintiff alleges the ALJ failed to properly weigh or acknowledge the substantial objective evidence in the record documenting the severity of Plaintiff's medically determinable impairments.[1]

**1.     Severe impairment**

An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's physical or mental ability to perform basic

---

[1] Where, as here, a plaintiff alleges that the ALJ's decision was not supported by substantial evidence, but fails to offer any particularized, cogent argument to support his contention, the Court need not "formulate arguments on the Plaintiff's behalf" or engage in an "open-ended review of the entirety of the administrative record to determine . . . whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and . . . whether the Commissioner sufficiently accounted for this evidence." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Rather, the Court's inquiry is limited to those "particular points," if any, that Plaintiff "appears to raise" in his appeal. *Id.*; *see also Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002) ("Ordinarily, we will not consider issues that have not been fully developed by the briefs or in the record."; *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

work activities. 20 C.F.R. § 404.1520(c). Conversely, a "non-severe" impairment or combination of impairments does not significantly limit an individual's physical or mental ability to perform basic work activities. § 404.1521(a). At step two, "significant" is liberally construed in favor of the claimant. *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 428 (6th Cir. 2007). "Basic work activities" are defined as the "abilities and aptitudes necessary to do most jobs." § 404.1521(b). Examples include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for hearing, seeing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situation; and (6) dealing with changes in a routine work setting. *Id.*

The purpose of the second step is to allow the Commissioner to "screen out totally groundless claims." *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 89 (6th Cir. 1985). The Sixth Circuit has construed the severity regulation as a "*de minimis* hurdle" in the disability determination evaluation. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (citations omitted). An impairment or combination of impairments is not severe "only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862 (citing *Farris*, 773 F.2d at 90).

When considering a claimant's symptoms at the second step, the ALJ must make two inquiries: (1) whether the objective medical evidence establishes a medically determinable physical or mental impairment(s) that could reasonably be expected to cause the alleged symptom(s); and (2) whether the intensity, persistence, and limiting effects of such symptoms limit the claimant's ability to do basic work activities. 20 C.F.R. § 404.1529; S.S.R 96-3p. In evaluating the intensity and persistence of a claimant's symptoms, the ALJ

considers all the available evidence, including claimant's history, signs and laboratory findings, statements from claimant about how symptoms affect claimant, and medical opinions. 20 C.F.R. § 404.1529(c). When an individual's statements about the intensity, persistence or functionally limiting effects of pain or other symptoms are inconsistent with other evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. *Id.*; S.S.R. 96-7p.

The ALJ found that Plaintiff had the following medically determinable impairments: hypertension, atrial fibrillation and left eye blindness. (Tr. 11). Further, he found that such impairments could have been reasonably expected to produce the alleged symptoms. (Tr. 13). However, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not credible to the extent that they were inconsistent with the weight of the medical and opinion evidence. (Tr. 13).

        **2.    Substantial evidence supports the ALJ's determination that Plaintiff's impairments were not severe**

Plaintiff suffers from left eye blindness as a result of a shotgun blast to her face and torso when she was twenty years old. (Tr. 70). Plaintiff also suffers from chronic open angle glaucoma in her right eye, but her visual acuity is 20/20 with corrective lenses. (Tr. 336, 475). Despite this impairment, Plaintiff has worked several jobs and is able to drive a car. (Tr. 70-71). The only problem Plaintiff reported concerning her vision was that she was forced to quit a job where she did soldering because she could not see well enough to perform this specific task. (Tr. 70). However, under the regulations, soldering is not considered a basic work activity. Furthermore, in November 2006, Plaintiff's treating physician stated that Plaintiff had no restrictions regarding her vision. (Tr. 336). Despite

6

Plaintiff's complaint that her vision worsened in winter 2006 (Tr. 156), the record shows that Plaintiff has not been back to the eye doctor since December 29, 2006. (Tr. 475).

Plaintiff argues that it is improper to find a medically determinable impairment non-severe because the Plaintiff had the impairment during a period of employment. (Doc. #7-2, 7). Her argument is misplaced. The Sixth Circuit has held that "[p]rior work with an impairment may, of course, be a legitimate factor for consideration." *Mowery v. Heckler*, 771 F.2d 966, 971 (6th Cir. 1985). The regulations state that an impairment is not severe if it does not significantly limit the claimant's ability to perform basic work activities. Plaintiff has not offered any evidence to show that she cannot perform basic work activities. In addition to the several jobs Plaintiff has performed despite her left eye blindness, she testified that she drives, goes grocery shopping, cleans her house, and does her laundry. (Tr. 71, 137-141). Furthermore, her treating physician has opined that she has no restrictions concerning her vision. This evidence, together with the fact that Plaintiff has held several prior jobs without incident, supports the ALJ's determination that Plaintiff's impairment is not severe.

Plaintiff claims she has degenerative disc disease of the lumbar spine, status post remote surgery (Doc. #7-2, 1), and has been experiencing pain in her back since January 2005. (Tr. 137). It is noted in her medical records that she had a lumbar disc removed in the 1980's. (Tr. 300). However, the medical records are otherwise devoid of any objective evidence documenting degenerative disc disease. Further, Plaintiff has not sought any medical treatment concerning her back pain.

Plaintiff suffers from early degenerative changes of the medial joint in her left knee. (Tr. 517). In June 1998, Plaintiff had a partial medial meniscectomy and excision of a clear-

type cyst on the left knee. (Tr. 520). On July 5, 2007, Plaintiff returned to the surgeon complaining of pain in the medial aspect of her left knee. (Tr. 519). X-rays taken were unremarkable and, upon examination, no discrete mass was found. (Tr. 517). The doctor gave Plaintiff a Xylocaine injection. *Id.* On August 10, 2007, Plaintiff returned following the injection and stated her knee was no longer bothering her. (Tr. 518). The doctor told Plaintiff to return on an as-needed basis, and Plaintiff has not returned since that visit.

Plaintiff has suffered from bilateral carpal tunnel syndrome. Plaintiff underwent a right carpal tunnel release in 1985. (Tr. 300). She has not complained of any ongoing problem or received any further treatment on her right wrist. Indeed, a 2007 nerve conduction velocity test showed her right wrist to be normal. (Tr. 517). Plaintiff began experiencing tingling and numbness in her left wrist and after a nerve conduction velocity test found mild to moderate carpal tunnel changes, she underwent a left carpal tunnel release on July 30, 2007. (Tr. 517, 522). Following the surgery, she was instructed to wear a wristlet brace at night and refrain from golfing for about a month. (Tr. 517). The record shows that Plaintiff never returned for any future wrist problems.

Plaintiff also suffers from atrial fibrillation and hypertension. (Tr. 312). Plaintiff stated she experienced episodes of atrial fibrillation for eight years before finally seeking treatment in March 2006. (Tr. 300, 312). She reported symptoms of dizziness, occasional shortness of breath, occasional chest pain, and frequent urination. (Tr. 300-301, 312). However, Plaintiff reported that she was able to exercise when experiencing an episode of atrial fibrillation. (Tr. 300). Furthermore, she regularly walked two miles per day. (Tr. 300, 312, 323). In April 2006, Plaintiff underwent a Cardiolite stress test and a transthoracic echocardiogram. (Tr. 234, 258-259). The Cardiolite study was normal with no reversible

8

isotope defects and normal regional wall motion. (Tr. 234). Her left ventricular ejection fraction (LVEF) was 70%, within normal limits. (Tr. 234, 311). The echocardiogram showed a mild left atrial enlargement, but was otherwise unremarkable. (Tr. 258-259). It found normal left ventricular size and systolic function and no evidence of pulmonary hypertension. *Id.* At the May 21, 2008 hearing before the ALJ, Plaintiff stated that when she has an episode, she must go to bed because she gets extremely dizzy and tired. (Tr. 73). She also testified that she experiences episodes twice a week that can last up to two days in duration. *Id.*

While the objective medical evidence clearly establishes that Plaintiff has had recurrent episodes of atrial fibrillation, many times due to Plaintiff's refusal to take recommended medication or not taking them as prescribed, it says nothing about the severity of Plaintiff's condition. (Tr. 525, 547, 549). The mere diagnosis of a medical condition is not, by itself, indicative of a severe impairment. *See Higgs*, 880 F.2d at 863. Plaintiff's treating physicians' reports are silent concerning any physical limitations, as well as the intensity, frequency, and duration of her symptoms. In fact, the evidence establishes that some of Plaintiff's symptoms were "atypical" given the results of her stress test and echocardiogram. (Tr. 553). Plaintiff's cardiologist even questioned whether her reported symptoms were actually caused by her arrhythmia. (Tr. 524). The absence of physical restrictions from a treating physician constitutes substantial evidence that an impairment is not disabling. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 596 (6th Cir. 2005) (quoting *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989). Consequently, substantial objective medical evidence exists to support the ALJ's decision that Plaintiff's impairments are not severe.

In addition to the objective medical evidence, no treating physician has expressed an opinion regarding Plaintiff's functional capacity or on the ultimate issue of disability. In March 2007, Plaintiff's cardiologist made a note that Plaintiff had a "partial disability from a cardiac standpoint." (Tr. 489). However, there was no explanation as to what was meant by "partial disability," nor was there any rationale for the comment. Indeed, only three months earlier, the same cardiologist noted that Plaintiff had "no disability from a cardiac standpoint." (Tr. 307). Moreover, "'[t]he determination of disability is [ultimately] the prerogative of the [Commissioner], not the treating physician.'" *Warner*, 375 F.3d at 390 (quoting *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). The only medical opinion in the record was by a consultative examining physician, Dr. Kahwash. (Tr. 470-472). He reported Plaintiff had good strength and reflexes, good motor functioning and gait, no joint deformities, and negative straight leg raising. (Tr. 471-472). Her blood pressure was well-controlled and her heart had a regular rate and rhythm. *Id.* According to these objective findings, there was no physical evidence for restrictions in Plaintiff's tolerance for stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects, or ability to travel. (Tr. 472).

The ALJ also found Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not credible. "Since the ALJ has the opportunity to observe the demeanor of a witness, his conclusions with respect to credibility should not be discarded lightly and should be accorded deference." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (quoting *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 928 (6th Cir. 1987)). As noted above, there are clearly inconsistencies between Plaintiff's testimony at the hearing and the objective medical

evidence.  Given the objective medical evidence, Plaintiff's own treating physicians noted that some of her symptoms were atypical.  (Tr. 553).  Furthermore, no treating physician ever restricted Plaintiff's activities.  Finally, Plaintiff's own statements concerning her activities are contradictory.  Plaintiff has stated that she regularly walked two miles a day and even exercised during an atrial fibrillation episode.  (Tr. 300, 312).  However, now she claims she is so weak she cannot even make her bed (Tr. 167).  For all of these reasons, the Court concludes that the ALJ did not err in finding Plaintiff's statement concerning the intensity, persistence and limiting effect of her symptoms not to be credible.

### III.  CONCLUSION

Therefore, for the reasons stated herein, the Court concludes that the ALJ's decision that Plaintiff does not have a severe impairment or combination of impairments, and his ultimate finding that the Plaintiff was not disabled for purposes of the Social Security Act are supported by substantial evidence.  Accordingly,

**IT IS ORDERED as follows:**

1. The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

2. Plaintiff's Motion for Summary Judgment (Doc. #7) is hereby **DENIED**;

3. Defendant's Motion for Summary Judgment (Doc. #8) is hereby **GRANTED**;

4. A separate Judgment affirming this matter will be entered contemporaneously herewith.

This 24th day of August, 2010.



Signed By:
<u>David L. Bunning</u>　DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\5-09-223 MooreMOO.wpd